## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

BETTY BARKER                           :

     Plaintiff,                    :
                                 Case No. 3:07CV174

 vs.                                   :

MICHAEL J. ASTRUE,                     :     District Judge Walter Herbert Rice
Commissioner of the Social                Magistrate Judge Sharon L. Ovington
Security Administration,               :

     Defendant.                    :

_____

## REPORT AND RECOMMENDATIONS[1]

_____

## I.    INTRODUCTION

Plaintiff Betty Barker has worked as a retail team leader, an administrative assistant, and a sales clerk.  (Tr. 69).  She stopped working in December 2001 due to chronic obstructive pulmonary disease, degenerative joint disease, obesity, and hypertension.  (Tr. 68, 338).

In March 2002 Plaintiff filed an application for Disability Insurance Benefits (DIB) with the Social Security Administration.  She asserted in her DIB application that she became unable to work, and was thus under a disability, beginning on December 7, 2001.  (Tr. 50).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

After initial denials of Plaintiff's DIB application, Administrative Law Judge (ALJ) Daniel Shell held a hearing and later determined, in August 2003, that Plaintiff was not under a disability and thus not eligible to receive DIB.

Plaintiff successfully challenged ALJ Shell's non-disability decision in this Court, obtaining an Order remanding this matter for further administrative proceedings.  The Court directed the ALJ, on remand (1) to weigh the medical source opinions as required by the Regulations, (2) to provide a good explanation for the weight he provides to the medical source opinions as required by the Commissioner's Regulations, and (3) to re-evaluate Plaintiff's disability claim at Steps 2, 3, and 4, and if necessary Step 5 of the sequential evaluation process.  (Tr. 377-98).

On remand, ALJ Shell held another hearing and later found that Plaintiff was under a disability "commencing July (not the first), 2004..." but not before.  (Tr. 354). ALJ Shell's second decision is the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's second Decision and an award of DIB based on her March 2002 application, or at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order

2

affirming the ALJ's second decision.

## II.     BACKGROUND

### A.     Plaintiff's Age and Education

By the date of the ALJ's second Decision in November 2006, Plaintiff's age (55)

placed her in the category of a person of " advanced age" for purposes of resolving her

DIB application.  *See* 20 C.F.R. §404.1563(e); *see also* Tr. 353.  During the period from

July 2004 until November 2004, Plaintiff's age placed her in the category of a person

"closely approaching advanced age."  *See* 20 C.F.R. §404.1563(d); *see also* Tr. 353.

Plaintiff graduated from high school and completed one year of college.  (Tr. 74).

### B.     Plaintiff's Testimony

Plaintiff testified during the second administrative hearing that she last worked in

2001 for Meijers (a retail store).  (Tr. 620).  She first worked in sales then moved into the

regional office where her work involved some "heavy duty stuff" like setting up

conference rooms, mail wrapping and routing, and cleaning.  (Tr. 621).

When asked why she felt she could no longer work, Plaintiff testified, "The jobs in

the past that I have had, and what I am experienced in, consists of a lot of heavy lifting.  I

cannot do that because of my breathing, because of my knees, because of my back,

because of my hip...."  (Tr. 623).  Plaintiff explained she suffered from shortness of

breath, a result of chronic obstructive pulmonary disease (COPD), bronchiectasis, and

asthma.[2]  (Tr. 624).  She had been using a CPAP machine since 2003 and testified that

she could not sleep without it.[3]  (Tr. 625).  General household chores such as making a

bed or vacuuming cause her to experience shortness of breath.  (Tr. 624-25).  She suffers

"a lot of pain in the right lung" due to bronchiectas.  (Tr. 628).

Plaintiff also contracts lung infections very often.  At the time of the ALJ's second

hearing she had been on antibiotics every month for more than one year.  *Id.*  Her lung

infections cause her heart to race and flutter.   (Tr. 628-29).  She cannot be active for long

around the house, only fifteen-to-twenty minutes before she must sit and rest, depending

on the activity.  For example, if she makes the bed, she must rest after making one side

before moving to the other side of the bed.  (Tr. 629).

Plaintiff also has chronic knee pain (Tr. 625), which is more severe in her right

knee than her left.  (Tr. 625).  She underwent arthroscopic knee surgery in 2003 but it

only helped for a little while, and her severe pain returned.  (Tr. 625-26).  She has arthritis

in her back and hip joint.  (Tr. 627).  If she stands for any amount of time her back

bothers her.  *Id.*  She also experiences back pain "getting up and getting down...."  *Id.*

If Plaintiff lifts more than one pound of weight, she will start getting short of

breath, and she cannot bend and pick up things anymore.  (Tr. 627).  The heaviest weight

---

[2]  "Bronchiectasis" involves [c]hronic dilation of a bronchus or bronchi, usually in the lower portion of the lung, caused by the damaging effects of a long-standing infection."  Taber's Cyclopedic Medical Dictionary at 284 (19th Ed. 2001).

[3]  CPAP refers to continuous positive airway pressure.  *See* Taber's at 478.  "CPAP is a treatment that delivers slightly pressurized air throughout the breathing cycle.  This makes it easier to breath."  http://www.nlm.nih.gov/medlineplus (medical encyclopedia).

4

she can lift is a gallon of milk, but she is out of breath after she lifts out of the refrigerator.[4] (Tr. 627).

Plaintiff testified that can sit or stand no longer than 30 minutes without starting to have back and knee pain. (Tr. 627-28). Her weight at the time of the second administrative hearing was 330 pounds. (Tr. 628).

## C.    **Medical Source Opinions**

Plaintiff relies on the opinions of her primary care physician, Denise P. Rodney, M.D., who began treating Plaintiff in December 2000. (Tr. 226-56, 415-38, 585-95). Dr. Rodney summarized her treatment of Plaintiff in a November 2005 letter. She explained that Plaintiff's "obesity impacts on every aspect of her health and definitely affects her ability to be mobile. She would definitely be restricted to sedentary work." (Tr. 581). Dr. Rodney recognized that Plaintiff suffered from COPD and asthma and that she had been hospitalized many times for this. (Tr. 581). Yet, Dr. Rodney deferred to details provided by Plaintiff's pulmonary specialist, Dr. Murphy. *Id*.

Dr. Rodney further noted that Plaintiff underwent arthroscopic knee surgery in February 2003, which helped somewhat with her pain. (Tr. 582). Yet by the time of Dr. Rodney's November 2005 letter, she had begun to have some knee pain and swelling. Dr Rodney referred Plaintiff back to her knee surgeon, and Dr. Rodney believed that Plaintiff's knee "may be a cause of disability since it limits her to sedentary work. (Tr.

---

[4] One gallon of milk weighs about approximately 8.5 pounds or slightly more than one gallon of water (≈8.33 lbs.). http//:www.wikianswers.com/Q/; *see* http//:www.unc.edu/~rowlett/units/dictG.html.

582).

Dr. Rodney also discussed Plaintiff's mild degenerative joint disease in her back and her report of pain levels at 7 out of 10, presumably on a 10-point pain scale (10 being the most severe level of pain). (Tr. 582). After treatment with medication and exercises, Plaintiff did not complain to Dr. Rodney about back pain. *Id.*

As to her pulmonary function, Plaintiff relies on the opinion of Dr. Murphy, her pulmonologist, with whom she has treated since January 2000. In May 2003, Dr. Murphy completed a Medical Assessment questionnaire for the Ohio Bureau of Disability Determination. He concluded based on Plaintiff's weight of 315 pounds that she could not even perform sedentary exertional work. He remarked that Plaintiff's asthma was well controlled on her current medication, but is fragile and if exacerbated is hard to control. (Tr. 261).

Plaintiff also relies on the opinions of Dr. Fritzhand, a one-time examining physician, who opined in June 2003 that Plaintiff could not perform sedentary work on a sustained basis during an eight-hour work day. (Tr. 287). He summarized his findings in part by explaining:

> This is an unfortunate morbidly obese middle-aged woman with a five-year history of shortness of breath. Dynspnea has progressively worsened during this period. The patient was dyspneic on exertion while breath sounds were different. There is no clinical evidence of congestive heart failure.... The patient has marked musculoskeletal distress involving both knees, uninfluenced by recent arthroscopic surgery on the right knee. She has marked gait disturbance.... Obesity contributes to her symptoms and weight reduction would diminish her complaints. Her tolerance for standing, walking, stooping, bending, lifting, sitting and traveling is poor.

6

(Tr. 291).

The Commissioner relies on the opinions of Dr. Boyce, a medical expert, who testified during the ALJ's second hearing.  Dr. Boyce described the medical records in detail during the hearing.  (Tr. 630).  He testified that Plaintiff's "ability to do much walking pretty much ceased in the middle of 2004, in July when she started ... having multiple respiratory infections."  (Tr. 638).  At best, according to Dr. Boyce, Plaintiff could perform only sedentary work after July 2004.  (Tr. 641).  Dr. Boyce explained that before July 2004, Plaintiff's shortness of breath did not preclude her from walking or standing six hours during an eight-hour period as shown by two walking tests in early 2004.  (Tr. 638-39; *see* Tr. 639-49).

## III.   ADMINISTRATIVE REVIEW

The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).[5]

Social Security Regulations require ALJs to resolve whether a claimant is under a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R.

---

[5]  Other DIB eligibility requirements are not at issue in this case.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

§404.1520(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review,

*see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the

sequential evaluation answers five questions:

1.    Is the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or
      equal the criteria of an impairment set forth in the Commissioner's Listing
      of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity, can the claimant
      perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and
      residual functional capacity, can the claimant perform other work available
      in the national economy?

*See* 20 C.F.R. §416.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

In his second decision in the present case, ALJ Shell found at Step 2 that Plaintiff

had the following severe impairments:  chronic obstructive pulmonary disease,

degenerative joint disease of the knees, and obesity.  (Tr. 347).

ALJ Shell determined at Step 3 that Plaintiff does not have an impairment or a

combination of impairments that meet or equal one in the Listings.  *Id*.

At Step 4 ALJ Shell found that Plaintiff had the Residual Functional Capacity to

perform at a reduced range of light work.[6]  He described his specific findings as follows:

> Prior to July (not the first), 2004, the claimant was capable of performing basic exertional activities associated with light work subject to the following additional restrictions: she should not have been expected to operate foot controls; she was limited to working in a clean-air environment; and she was restricted to working on level surfaces.

> Since July (not the first), 2004, there has been further deterioration in the claimant's condition, primarily due to recurrent respiratory infections and worsening symptoms of degenerative joint disease. Commencing July (not the first), 2004, the claimant's functional capacity was reduced to the extent that she could no longer be expected to perform any type of competitive employment, including sedentary work, on a regular and continuing basis.

(Tr. 353).  This RFC, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB before July 2004.  (Tr. 338-354).

The time period at issue in this case is from Plaintiff's claimed disability onset date of December 7, 2001 to July 2004.  During this period, according to the ALJ, Plaintiff was not under a disability.

---

[6]  Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. §404.1567(b).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo. See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing the administrative record for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be not upheld even when substantial evidence supports the ALJ's findings. *See id.* A decision will not be upheld, for example, where the ALJ failed to follow apply the standards mandated by Social Security Regulations and

where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## V.  DISCUSSION

### A.  <u>The Parties' Contentions</u>

Plaintiff contends that the ALJ erred by not applying any of the regulatory factors to the opinions of her treating physician, Dr. Rodney, and thus failing to provide good reasons for rejecting Dr. Rodney's opinion that she could perform only sedentary work due to obesity and its impacts on her abilities. (Doc. #7 at 14). Plaintiff emphasizes that a limitation to sedentary work matters in this case because this restriction along with her age would result in a finding of disability pursuant to the so-called "Grids," the Medical-Vocational Guidelines, 20 C.F.R. Appendix 2, Subpart P, Rule 210.14.

Plaintiff further argues the ALJ erred in his evaluation of the medical source opinions provided by treating pulmonologist Dr. Murphy, examining physician Dr. Fritzhand, and non-examining physician Dr. Boyce.

The Commissioner argues that the opinions of Drs. Rodney, Murphy and Fritzhand were not entitled to controlling or deferential weight, and that the ALJ properly weighed their opinions as required by the Regulations and Rules. The Commissioner explains:

> Contrary to Plaintiff's allegations, the ALJ provided several good reasons for his RFC finding. The ALJ identified evidence that supported his reasons for rejecting the opinions that rendered Plaintiff disabled or called for greater restrictions prior to July 2004.

(Doc. #9 at 11). The Commissioner relies on the opinions of Dr. Boyce and "state agency

11

physicians who opined that Plaintiff could perform light work...." *Id*. at 12.  And the Commissioner rejects Dr. Rodney's opinion as unsupported by his own clinical findings. *Id*. at 13-14.

**B.   Discussion**

**1.**
**Medical Source Opinions**

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician who saw a claimant only once, or a medical advisor who testified before the ALJ.  *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record.  *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and

the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, the opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1572(d), (f).

## 2.
## Analysis

The ALJ correctly set forth the standards applicable to evaluating a treating physician's opinion to determine (1) whether the treating physician rule applies and (2) when it does not, whether the opinion should be credited under the remaining regulatory factors. *See* Tr. 342-43. In doing so, the ALJ did not err as a matter of law.

The ALJ described Dr. Rodney's records and opinions and found that her statements "support a finding that the claimant has a 'severe' impairment which results in significant functional limitations but not to the extent that she is necessarily rendered

13

disabled from all work activity or unable to do at least sedentary work." (Tr. 345). But, the ALJ's decision contains no application of any of the standards required by the Regulations under the treating physician rule or any of the remaining factors required by the Regulations. This constituted error particularly as to Dr. Rodney's opinion that Plaintiff's "obesity impacts on every aspect of her health and definitely affects her ability to be mobile. She would definitely be restricted to sedentary work." (Tr. 581). The ALJ's failure to mention or apply any remaining regulatory factor – supportability, consistency, specialization, *see* 20 C.F.R. §404.1527(d)(3)-(5) – beyond those applicable to determining whether controlling weight should be placed on Dr. Rodney's opinions leaves his decision void of a good explanation for rejecting this long-term treating physician's opinion. *See Wilson*, 378 F.3d at 544-45 (ALJ's summary dismissal of the plaintiff's treating physician's opinion failed to meet the "good reasons" requirements of the Regulations).

The Commissioner does not contend that the ALJ applied the correct regulatory factors to support his rejection of Dr. Rodney's opinions. *See* Doc. #9 at 10-14. Instead, the Commissioner argues that the ALJ provided several good reasons throughout his decision why a <u>residual functional capacity</u> for sedentary work prior to July, 2004, was not supported. (Doc. #9 at 11). This argument lacks merit because the issue is not whether the ALJ provided good reasons for not assessing Plaintiff at a particular level of residual functional capacity, but whether the administrative law judge provided good reasons for rejecting this treating physician's opinion. *See* 20 C.F.R. §404.1527(d)(2);

14

*see also Wilson*, 378 F.3d at 545-47; *Rogers*, 486 F.3d at 242-43; *Bowen*, 478 F.3d at 745-46.

The Commissioner also argues that the ALJ properly exercised his discretion to weigh the evidence and that substantial evidence supports the ALJ's decision. There is no doubt that when determining "whether substantial evidence supports the ALJ's decision, [courts] do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *see Bradley v. Secretary of Health & Human Services*, 862 F.2d 1224, 1227 (6th Cir. 1988). It is ALJ's duty to resolve such matters. But in doing so, the ALJ must apply the correct legal criteria and follow the mandatory procedural requirements set forth in the Commissioner's Regulations. *See Bowen*, 478 F.3d at 746; *see also Wilson*, 378 F.3d at 545-47. If the ALJ does not, the decision may not be not upheld even when substantial evidence supports the ALJ's findings. *See Bowen*, 478 F.3d at 746.

The Commissioner's reliance on the ALJ's duty to resolve the evidentiary conflicts does not show that the ALJ did so by applying the correct legal criteria. Although the Commissioner's arguments may be read as an attempt to show that any error by the ALJ when rejecting Dr. Rodney's opinion was *de minimis* or harmless, this contention lacks merit. A review of Dr. Rodney's opinion does not reveal that it was so patently deficient that the Commissioner could not credit it. *See Wilson*, 378 F.3d at 547. Dr. Rodney provided a definitive opinion about Plaintiff's inability to be mobile due to her morbid obesity and thus provided reasons in support of her definitive opinion. *See* Tr. 581-82.

15

The Commissioner also provides several reasons why Dr. Rodney's opinion was not due any weight, *see* Doc. #9 at 14, but the Commissioner does not contend that the ALJ used these same reasons as a basis for rejecting Dr. Rodney's opinions. "A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546. Such post-hoc rationalizations are especially impotent of persuasive force in overcoming the ALJ's failure to provide good explanations for rejecting the opinions provided by Plaintiff's long-term treating physician, Dr. Rodney. *E.g., Wilson*, 378 F.3d at 545-47.

Dr. Rodney's opinion, moreover, was consistent with the earlier opinions a one-time examining physician, Dr. Fritzhand, who opined that Plaintiff could not perform sedentary work over the course of an eight-hour day. *See* Tr. 283-91. The ALJ rejected this opinion by finding, "The conclusion of disability reached by Dr. Fritzhand appears somewhat excessive in view of his objective findings." (Tr. 344). The ALJ erred on this point by not relying on another medical source opinion of record to support this reason, *see id.*, but instead relying on his own lay medical opinion about the significance of the objective findings identified by Dr. Fritzhand. "[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir. 1999)("[T]he ALJ cannot arbitrarily substitute his own opinion

16

for competent medical opinion."); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th

Cir. 2004)(ALJ improperly rejected treating physician's opinion "because of the ALJ's

own credibility judgments, speculation or lay opinion.").

In addition, the ALJ used his own lay medical opinion to select those findings

from Dr. Fritzhand's narrative report to support his non-disability finding.  This

constituted error.  "An ALJ must not substitute his own judgment for a physician's

opinion without relying on other evidence or authority in the record." *Clifford v. Apfel*,

227 F.3d 863, 870 (7th Cir. 2000); *see Meece v. Barnhart*, 2006 WL 2271336, *8 (6th Cir.

2006)("the ALJ may not substitute his own medical judgment for that of the treating

physician where the opinion of the treating physician is supported by the medical

evidence); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir. 1999).  The ALJ wrote,

for example, "Dr. Fritzhand admitted in his narrative report that 'there are no joint

abnormalities [such] as heat, swelling, and capsule thickening....'" (Tr. 344) (quoting in

part Tr. 291).  In using his own lay medical opinion to emphasize this statement by Dr.

Fritzhand in isolation, the ALJ overlooked that Dr. Fritzhand also based his opinions on

his range of motion findings.  *See* Tr. 291.  And Dr. Fritzhand explained that Plaintiff has

"marked musculoskeletal distress involving both knees, uninfluenced by recent

arthroscopic surgery on the right knee.  She has marked gait disturbance."  (Tr. 291).  The

ALJ's contrary lay opinion does not support his rejection of Dr. Fritzhand's opinion.

The ALJ also concluded, "Furthermore, the ultimate conclusion of Dr. Fritzhand

appears to be biased towards of finding of disability."  (Tr. 344).  The ALJ does not point

17

to any specific reason in the record to support this conclusion that Dr. Fritzhand was

biased toward a disability finding, *see id*., and, consequently, this conclusion constituted

further error.  The ALJ noted that Dr. Fritzhand examined Plaintiff at the request of her

counsel.  (Tr. 343).  The Regulations do not permit the ALJ to discount a one-time

examining physician's opinion based on this fact, *see* 20 C.F.R. 404.1527(d).  And, there

is nothing inherently improper or biased about the act of paying for the opinion of an

examining physician, whether paid by the Social Security Administration or the state

agency or a plaintiff.  *Cf. Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996)("The

[Commissioner] may not assume that doctors routinely lie in order to help their patients

collect disability benefits.").

Accordingly, Plaintiff's Statement of Errors is well taken.


## VI.    REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are

not supported by substantial evidence, the Court must decide whether to remand the case

for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42

U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's

decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*,

501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous

principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of*

18

*H.H.S*., 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff contends that a judicial award of benefits is warranted for the period not granted by the ALJ – beginning on her claimed disability onset date of December 7, 2001 to July 2004 – because given her age and her ability to perform only sedentary work, she would be under a disability pursuant to the Grid Rule 201.14.  This contention lacks merit because Dr. Boyce's opinions, if accepted, would establish that Plaintiff could perform a limited range of light work during this period.  In addition, an evidentiary conflict exists between Dr. Boyce's opinions and those of Drs. Rodney and Fritzhand and Murphy, which has not been administratively resolved under the standards required by the Regulations.  Given this conflict, judicial award of benefits is unwarranted because the evidence of Plaintiff's disability during this period of time is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration for further proceedings pursuant to Sentence Four of §405(g) due to the ALJ's failure to weigh the medical source opinions of record as required by the Regulations.  On remand, the Commissioner and the ALJ should be directed to (1) re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; (2) explain the evaluation of the medical sources as required by the Regulations, Rulings, and case law; and (3) determine anew whether is under a "disability" during the period of time

19

beginning on the date of her claimed disability onset (December 7, 2001) to July (not the first), 2004.

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. §405(g) for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.     The Commissioner's non-disability finding be vacated;

2.     No finding be made as to whether Plaintiff Betty Barker was under a "disability" within the meaning of the Social Security Act during the period of time at issue;

3.     This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.     The case be terminated on the docket of this Court.


July 17, 2008


                              s/ Sharon L. Ovington
                              Sharon L. Ovington
                              United States Magistrate Judge

20

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).